CITY OF DULUTH v. JOHN A. OBERG.[1]

May 2, 1941.

No. 32,805.

[1]Reported in 297 N. W. 712.

*Jenswold & Dahle,* for appellant.

*Harry E. Weinberg* and *Harry T. Lathrop,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendant was convicted of violating an ordinance providing that "it shall be unlawful within any public street, ground or thoroughfare, * * * or other public place within the limits of the city of Duluth, for any person * * * to appear in such public place in a state of open drunkenness." The court sentenced him "to pay a fine of $25.00 and costs ($5.00) or in default of payment" that he be committed to jail until the fine and costs were paid, not exceeding 30 days. Defendant appeals from the judgment.

Counsel for both parties have cited numerous cases defining "drunkenness" and "open drunkenness." The court was of opinion that "open drunkenness" is "a state where a party's mental faculties would be visibly impaired." Defendant contends "that to sustain a conviction under the ordinance the prosecution must prove an aggravated state or degree of intoxication under circumstances of publicity, in a public place, calculated to and which actually disturbed the peace and good order of the municipality."

We shall not attempt to draw any fine line of distinction between "drunkenness" and "open drunkenness" other than to relate the facts, since from these an appropriate conclusion can be reached.

The court could find the facts to be as follows: During the early morning of November 7, 1940, between 2:30 and 3:00 o'clock, defendant arrived home and by "a loud noise and shouting" awakened a young lady living near-by, who knew from past experiences "where they [the noise and shouting] came from." The outside door was shut. Seeking entrance, defendant "threatened to break the door down and actually began to batter the doors." When he got inside "there was this terrific shouting." She heard defendant's wife shouting, "Call the police." Witness knew that Mrs.

Oberg had been "ill all summer," and "knew someone in that condition couldn't stand much," therefore she concluded it was her duty to call the police, and she did that. Shortly thereafter defendant left through the back door. The police came promptly. Defendant was arrested by two police officers near-by, at Seventeenth avenue and Fourth street. They observed defendant approaching at a "staggering" gait. His speech was "incongruous" and "absurd," and he had a strong odor of whiskey on his breath. Taken to the station, the jailer, a man of many years' experience with those who imbibe "not wisely but too well," entertained no doubt as to defendant's drunken condition.

To adopt defendant's argument, namely, that the drunkenness which the ordinance seeks to punish must be "of a more aggravated or greater degree than *mere intoxication,* and to be guilty thereof a person must have engaged, in a public place, *in disorderly conduct, the making an exhibition of himself before others, acting so as to offend them,*" so that thereby "the public peace and good order of the city" is disturbed, appears to be rather too narrow a view. (Italics supplied.)

The court could well find, as it did, that defendant was in a state of "drunkenness" and that in such condition he appeared upon the public streets of Duluth. If he had appeared in this condition and upon the same street during the busy hours of the day while people were passing to and fro in large numbers, no one would be likely to contend that he was not subject to arrest and conviction under the ordinance. Are we then so to construe it as to limit its plain language to daytime hours, and, if so, what hours? How many people must meet or pass by a drunken person before he makes "an exhibition of himself" in such fashion "as to offend them"?

What the ordinance seeks to accomplish is to keep persons in defendant's condition off the streets and all other "public" places. We think the words "open drunkenness" convey that idea.

The words "drunk" and "drunkenness" frequently have been defined and applied by the courts. It is not deemed necessary to

cite or discuss them since they are easily available. See 13 Wd. & Phr. (Perm. ed.) pp. 419-422, for definitions of "drunk," and for "drunkenness," *Id.* pp. 423-427.

There are other assignments of error discussed in the briefs, but we find upon examination thereof that these do not require separate treatment.

Judgment affirmed.